At this time we'll hear Ace Partners v. The Town of East Hartford. Good morning. Good morning. Judges of the Court of Appeals, my name is Tom Girard. I'm arguing this morning on behalf of the defendants. Your Honors, the Connecticut Precious Metals Statute has a requirement that no person shall operate a precious metals business without first obtaining a license from the Chief of Police. And under that statute, the Chief has discretion to issue the license, but there's a restriction on that discretion. No felons may obtain a license. That's the one restriction. Where's the discretion? The discretion is- In what words? Well, the words discretion are not in that statute. However, the one appellate court that interpreted this statute has found that there is discretion. It's Aurelio v. Sweeney is the key case. Aurelio v. Sweeney determined that this is a fully discretionary statute that has limited only in one way, no felons. That received a per curiam affirmance by the Connecticut Appellate Court. And we all know what per curiam means, that they felt that it was so obvious or it settled that they didn't need to write a decision. Furthermore, the district court in Barrella versus Rilling, as Judge Underhill in 2014, analyzed the legislative history behind this. And that's fully described in the Barrella decision. And it indicates in the legislative history, the statute started out as fully discretionary. The legislature- The wording was changed. Well, Judge Underhill explains this in the Barrella decision. Before you argued that it once contained language of discretion, the harder it is for you to argue that it still does now that that wording was taken out. The only wording that was taken out was suitable, and here's the history behind that. The statute started out as discretionary. Then the legislature sought to guide the discretion by using the word suitable. How can you say it, what makes you say it started out as discretionary? Because there were no limits. It contained the words suitable, right? We're saying- Suitable persons. Yes, it did say suitable person in one iteration. And as we see in the Barrella decision, that the legislature sought to guide discretion by adding the word suitable. And then thought better of it and said, we will limit discretion by saying no felons. But there is always discretion in this statute. That is the consistent- I understand your argument to reduce to what this statute does is limit discretion to grant, not limit discretion to deny. Yes, exactly. It limits- And you're gleaning that from the fact that there has to be a license. That's in the first sentence of the statute. That the, later on the statute does talk about revocation for requirements for licensure specified by the licensing authority. Which suggests that the licensing authority will impose requirements. And then the next sentence which says, the licensing authority shall refuse. And there are the two circumstances where it must refuse. That's the limited discretion on its authority to grant. Is that your argument? That's the limit on the discretion, yes. On the discretion to grant. Yes, exactly. Yes, and that's the only way to look at this. If you think about it, if you look at the district court's interpretation that everyone is entitled to a license unless you're a convicted felon, look at the bizarre and dangerous results that will place on all of Connecticut's towns. A person with 100 larceny convictions for trafficking stolen jewelry will have an entitlement constitutionally protected so long as there's no felony conviction. Or even if there's a felony conviction for receiving stolen goods, several felonies. If that person can find a spouse or someone else to go and apply for a license, that person will have a clear entitlement to the license just because that person doesn't have- Actually, no license were required. I'm sorry? Suppose that no license were required to operate this sort of business. Generally, you don't need a license to operate a business. Well, the Connecticut legislature has provided towns with the police power to have regulations like this and ask for licenses in cases where it would be a good idea to have it. And there's a strong policy in favor of criminals not running precious metals businesses. Our district court recognized that. I'm sorry, Judge, I'm not hearing it. I have another question for you. What difference does it make as a practical matter in terms of damages, of compensatory damages for serious injury? How can you say that you suffered damages as a result of not receiving a hearing when the only reason that the police chief didn't give a hearing was the police chief was absolutely committed to the proposition that this person shouldn't get a license? That's a very good point, that I actually make that point. There's no proximate cause here. The plaintiff has an obligation to prove proximate cause as well as civil rights violation. So the fact that there is, even if there was a procedural due process violation, there's no proximate cause here because he'd have to show, if I only got my audience with the police chief, I would have walked away with a license. And we know that's not the case. There were two arrests at this place, and the general manager who wanted the audience had a warrant pending for him. Nothing flowed from the failure, there were no consequences to the failure to give a hearing. There was no consequences whatsoever, that's our third argument. But the more important argument is this, this is a bizarre and dangerous interpretation of this statute. And if our legislature thought that Aurelio got it wrong, it would have corrected that. But Aurelio Appellate Court, which is binding on all of the Connecticut courts, got it right. The one case relied upon by our district court, Curcio versus Torres, was a preliminary injunction hearing before Judge Gattell, and he said, and was there a likelihood of success, he found no irreparable harm. Therefore, it was just surplus language or dicta to think about, was there a likelihood of success? And even when he did, he said, this statute seems to have only one requirement, not be a felon. And it appears there might be a likelihood of success. Our district court ignored Aurelio and grabbed onto this Curcio decision that has no weight whatsoever. And I'll just say it this way, if we have criminals running special, I'm sorry, precious metals operations, then that will inspire more types of crime that will have other criminals bring stolen goods to those businesses. So you'll have house burglaries, you'll have purse snatchings, you'll inspire muggings for wedding rings and watches and things like that, because if the people know there's a safe place to go- As an imperfectly drawn statute. Well, I would say this, the legislature saw how it was interpreted by the Aurelio Appellate Court in 2001. And if they thought that they got it wrong, they could have corrected it. They had 15 years to change it. They had 15 years to change it, yes, that's our point. Now, could it have been clearer? Maybe, but I think, to read again Judge Underhill's analysis of the first guide on discretion was suitable persons, and then they thought better of that the next year, the guide on discretion was no felons. So what they're really saying is, we're not going to give you the judgment call on who's suitable or not. We're going to tell you that felons are not suitable, they do not get a license, but otherwise you have your discretion. That's been the consistent reading throughout. Thank you. Good morning, your honors. May it please the court. My name is Daniel Clow, I represent the Plaintiff Appellee Ace Partners. Your honors, when the Connecticut General Assembly wants to give municipal officials discretion to deny a license because a person, an applicant, is unsuitable. Well, what sense would it make to draft a statute such as this one, that according to you, requires the issue of a license to anyone who's not a convicted felon, and yet can be revocable for cause, for any reason? Well, that is the policy line that the general assembly drew. It's a debatable one. I understand that they drew it, because I'm reading it. The question is, what sense does it make to require the issuance of a license to anybody, but then allow for it to be revoked for cause, including presumably being an unsuitable person? Well, I think it does make sense. I think that the revocable for cause fits nicely with the rest of the statute. So let me give you an example. Let's take Mr. Gerard's parade of horribles. So an individual with a misdemeanor larceny conviction applies for the license. Under the plain language of the license, he's not a felon. Judge Shotney held, and we agree, he's entitled to the license. However, the statute does give the chief of police the authority to impose licensing conditions at the time. And put the person on notice that if there are any other criminal activities during the course of the license, it shall be revocable. And if the- Then it's revoked, and they immediately apply. But because they found all kinds of contraband in the place, but he's not yet been convicted, he has to be given a license? No, and we agree that that would be an absurd and unworkable. Where does the statute permit that? Well, because if there has been a revocation for cause, there has been notice, an opportunity to be heard by the applicant, and due process has been given. And the licensing officer concludes to terminate the license, then we agree that it would be absurd to say that that very same applicant can turn around and demand the license just because he's not a felon. But that is a completely different situation. Then on what basis can he be denied that license? You may say it's absurd, but if you have an entitlement to it, you have an entitlement. Well, I'm saying that to read the statute as requiring a person whose license has been revoked for cause to automatically get it because they weren't a felon. I agree that that would be an absurd and unworkable interpretation, and under the plain meaning rule, that would not make sense. Why then wouldn't there be an ability to deny on at least the same grounds as you could revoke? Because the statute doesn't give that authority in the first instance. Well, let me suggest to you that the statutory language you're emphasizing about the licensing authority shall refuse to issue a license in the two circumstances that are then specified. Is a limit on their discretion to grant. It is not a limit on their discretion to deny. Well, I understand that argument, Your Honor. That is- And why doesn't that solve all the concerns we've just identified construing the statute that way? Because that- There are only two limits on their authority to grant. Yes, Your Honor, because that reads the suitable person's language. It makes it surplusage. But this statute has no suitable person's language. That's true, but the plain- Can we start with the language of the statute? Well, under Connecticut General Statutes 1-2Z, which this court follows when it's construing state law, the rule is that you look at the plain language of a statute, not in isolation, but in relation to other statutes. The other statutes that Your Honors must consider are the pawnbroker license statute, and two other statutes we reference in footnote three at page 12 of our brief. Those are statutes where the legislature made a considered decision to put the words suitable person. They all, in fact, the pawnbroker statute has the very same limitation on the grant of discretion that you've referenced. You can't give it to a felon, but it also says that the chief of police has discretion to give it to a suitable person. The defendant's position is that the discretion that the chief of police has under the pawnbroker statute, which has a suitable person standard, is the same as the precious metals. Even though one statute says suitable persons and the other doesn't. And they're very frank in their brief. Am I correct that your client's pawnbroker license was, in fact, not granted? It expired. It expired and it wasn't, this is all about renewal. Yes, correct. It was not renewed. The pawnbroker license was not renewed. Yes, that's correct. And there's no challenge to that. There's no challenge. Judge Shotney. Then I'm not sure, well, perhaps it's not an issue here, but I can't imagine what damages there would be if you can't be a pawnbroker complaining that you can't traffic in precious metals. Well, because the- That's an integral part of the pawnbroking business. Well, it's an integral part of the pawnbroking business, but what the magistrate judge determined after hearing evidence from what she called a battle of the experts was that the precious metals license itself was a business. In fact, she describes in the beginning of her opinion that there were sort of three components to the business. Judge, magistrate judge determined that even as, yes. The damages for the precious metals license was determined separate and independent of the pawnbroker. Absolutely. In fact, that was- Yes. I appreciate that. Go right ahead. All right, so if I can just come back to your point, your honor. You have two statutes that are very similar in that both say the chief of police may not grant a license to a felon, okay? But the pawnbroker statute has additional language, which says you may only grant it to a suitable person, okay? That's the discretion that the chief of police has in the pawnbroker. That language is not in the precious metals license. But the language might be viewed as broader. No person may engage, it's the person who's limited. No person may engage unless he has a license. And we know that the authorities can specify requirements for licensure because that's a ground for them to revoke. So it just doesn't seem that there's anything in this language that limits the requirements they can put on it. All we know is that no matter what requirements are satisfied, they can't give a license to someone who's a felon. So I understand your honor. If I accept that argument, then three statutes contain completely meaningless language. The suitable person language that's in the pawnbroker statute, the second hand dealer statute, and the junk dealer statute, these are cited in footnote three. All have suitable person language in them. And if your argument is correct, that's meaningless verbiage. And we all know as a matter of statutory construction, we do not read- I may not have been clear. You are urging us to construe the lack of that language to make this statute narrower in its authority to the licensing authority to the local people. I'm suggesting to you that its absence suggests they have more discretion. There's no doubt there's a difference. I mean, the statutes have different language, but why should we assume this requires more licenses rather than allows more discretion to deny? Under the case law that I'm aware of, I don't think you can grant more discretion, I mean, in terms of wording, than giving a chief of police suitable person discretion. That's sort of the maximum discretion that a person would have under the law. So when the General Assembly puts the word suitable person in a statute, they are saying to the chief of police or the town selectman, you get to make a character subjective judgment about this person. When that language isn't in the statute, and it's in the same title, 21, where the General Assembly has repeatedly put the word suitable person in, the only conclusion I think that you can reasonably reach is that the- Suitable person is limiting. Yes. Well, it's limiting in terms of- There's a difference between having a discretion that's bounded by the suitable person standard and discretion that's not bounded by anything other than a felony, the inappropriateness of a felony. Well, I don't think- Like, for example, supposing that the chief of police wanted to decide that there are too many precious metals dealers in the town, we don't need another one. That might be illegal, but it's not illegal under that statute. Or if he decided, no, the placement of the business is bad for the town, it's not a good idea to have one there. There are other standards, there are other discretionary reasons that one could deny a license other than suitable person. I agree, Your Honor. If I could close with just this- It's not meaningless. It's not the business. It is not. Language suitable person in the other statute is not meaningless. Well, under our interpretation, it's definitely not meaningless. Yes, but you're saying that one cannot interpret it as without discretion because that would make the suitable person language in the other statutes meaningless and that's not correct. Well, I may be misunderstanding the precise point, Your Honor, but I think I disagree with that. But if I can just close with this statement. The General Assembly considered including the words suitable person in the precious metals license statute. In fact, that was the original amendment and the limitation on the discretion, no felons. It made a conscious decision to remove that language from the bill, which then became law. What the town is asking the court to do is put that back in. And that's my point, Your Honor. We ask your honors to affirm the judgment below. Thank you very much. I'll hear rebuttal. Very briefly, Your Honor. In our reply brief, I think is the key case regarding interpreting statutes in Connecticut that applies to our situation. It's Ventura versus the town of East Haven on page nine of our reply brief. Our appellate court said there, the principles of statutory construction favor a rational and sensible result. The unreasonableness of the result obtained by the acceptance of one possible alternative interpretation of an act is a reason for rejecting that interpretation in favor of another which would provide a result that is reasonable. When two constructions are possible, courts will adopt the one that makes the statute effective and workable and not one which leads to difficult and possibly bizarre results. We would indeed have difficult and bizarre results if everyone except a convicted felon had a constitutionally protected entitlement to a precious metals license for the reasons stated on opening argument. A couple of other comments. There is a difference between a pawnbroker statute and a precious metals statute. They're different statutes. The legislature certainly is free to say in one case, it's a different, when we're regulating the pawning of a used television, that's different than jewelry, things like that that can inspire crime. And I think that's why the legislature, once again, what Judge Underhill found in the Barletta case- They both inspire crime. Some people steal television sets, other people steal- Well, they certainly could. But I think when you think about a stolen jewelry operation, you think about muggings, purse snatchings, house burglaries, which I guess could get a television. But jewelry is a hot commodity. And it's reasonable that they might want to treat them different and say, wait a minute. But as Judge Underhill said, you have unfettered discretion to start with. You then went to suitable person's standard. And we didn't like that. You're now going to no felons. But you keep your discretion. It's exactly as Judge Underhill determined that. You have full discretion except no felons. So what we're asking for is a reversal of the summary judgment found against us for procedural due process violation, entry of judgment in favor of the town on that issue, and then reversal of the attorney's fees award because they're no longer prevailing parties. Why do you say that if the statute were interpreted that way, it would give a constitutionally protected right? It's one thing to have a right that's protected under Connecticut law. That doesn't necessarily make it a constitutionally protected right. Well, in this case, what Judge Schottening, our district court, found is that there was a clear entitlement to this license based on his reading of that statute that everyone except a convicted felon has an automatic can't say no right to the license. And when you have that type of clear entitlement, you do get a constitutionally protected property interest that will then lead you to due process protection. So that's why we can't get away from that. They'd have a constitutionally protected mandate. We'd have to give them the license no matter who they are, where they've been, what they've done. They may be entitled to due process, but that doesn't mean the Constitution entitles them to the license, the U.S. Constitution. Well, it becomes a constitutionally protected property interest, which then triggers all the protections of the 14th Amendment, which triggers then procedural due process, which I also argue was met regardless. I think they got all their process was due. But we're in that vein, so they are getting a constitutionally protected interest if we go with the judge's interpretation. What process did they get? Krista Matuszkiewicz, who was the license holder, the license holder that expired, applied for a license, a renewal. It was considered, it was determined that there were arrests made in June, and then in August, her general manager, there was a warrant for his arrest, and she was told, no, we will not be renewing. Was she given an opportunity to be heard? Well, if you read, I want to get the joint appendix. I'm just asking. I mean, you said they got due process. The chief testified, and it's in our joint appendix. If she had called me, I would have talked to her. The one thing that didn't happen was when general manager, who had a pending warrant for his arrest, came and said, I want to talk to you. He said, no, I'm not going to talk to you. He would have had to read him his Fifth Amendment rights if he spoke to him at that point. I'd like to give you one joint appendix page, please. That's page 265 of the joint appendix. You'll see that Chief Saroy says, if Krista Matuszkiewicz called me about this when I told her she wasn't getting her license renewed, I would have talked to her. So her due process deprivation that they're claiming now is a post-deprivation refusal to talk to the general manager who had a warrant pending for larceny. Thank you. Thank you both. We'll reserve decision.